# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| JAMES CODRINGTON, : | |
| *as Assignee of the rights of* : | |
| *Crosstech VI, Inc.,* : | |
| **Plaintiff** : | CIVIL ACTION NO. 1:19-26 |
| v. : | (MANNION, D.J.) |
| : | (HENDERSON, M.J.) |
| DEEP SOUTH SURPLUS OF TEXAS, : | |
| *et al.,* : | |
| **Defendants** : | |
| : | |

## MEMORANDUM

Pending before the court is the report of United States Magistrate Judge Emile A. Henderson III[1], which recommends that the renewed motion to dismiss for lack of personal jurisdiction filed by defendant CRC Insurance

---

[1]In their filings, both parties' counsel misidentify Magistrate Judge Henderson as a "Magistrate." The title "magistrate" no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" in **1990**. Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge."). Counsel are reminded to use the correct title in the future, when referring to Judge Henderson.

Services, Inc. ("CRC")[2] (Doc. 157) be granted. (Doc. 191). Plaintiff has filed objections to the report and recommendation (Doc. 194) to which defendant CRC has responded (Doc. 198). Based upon the court's review of the record, the report and recommendation will be adopted in its entirety.

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. Fed.R.Civ.P. 72(b), advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa.

---

[2]CRC provides that it has been incorrectly named as "CRS SCU f/k/a Crump Ins. Services" in the complaint.

2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

Neither party challenges Judge Henderson's summarization of the background of the instant action. To this extent, the report reflects the following:

> In April 2019, James Codrington, as Assignee of the rights of Crosstech VI, Inc. and Edwin Correa, filed a First Amended Complaint in Virgin Islands Superior Court against Arch Specialty Insurance Company of Texas ("Arch"), Zurich Insurance Company ("Zurich"), Clarendon American Insurance Company ("Clarendon"), Deep South Surplus of Texas, L.P. ("Deep South"), and CRC SCU f/k/a Crump Ins. Services, entitled *Codrington v. Arch Specialty Ins. Co.*, Civ. No. 126/2019. Dkt. No. 1-2. That complaint was removed to federal court in May 2019 by CRC on the basis of diversity jurisdiction. Dkt. No. 1.
>
> Following removal, CRC filed a motion to dismiss or to transfer venue, Dkt. Nos. 4, 5. Arch filed a motion to dismiss for failure to state a claim, Dkt. Nos. 26, 27 and Clarendon filed a motion to dismiss for failure to state a claim, Dkt. Nos. 37, 38. In August 2019, Codrington filed a Second Amended Complaint against Steadfast, Clarendon, Deep South, and CRC. Dkt. No. 40.
>
> As alleged in the complaint, Codrington brought the instant action as assignee of the rights of Crosstech VI, Inc., a resident corporation of the U.S. Virgin Islands; Tom Crossland, a Texas

resident and former president of Crosstech Boiler Services, LP, the parent organization of Crosstech VI; and Edward Correa. Id. ¶¶ 2, 8. Crosstech VI was formed in 2005 as a wholly owned subsidiary of Crosstech Boiler Services, the "front company" for work to be done by Crosstech Boiler Services at the Hovensa oil refinery on St. Croix, Virgin Islands. Id. ¶ 10. Crosstech VI's employees were loaned to Crosstech Boiler Services. Id. ¶ 11. The vehicles used in Crosstech VI's work were hired from Crosstech Boiler Services, and the insurance on those vehicles was provided by Crosstech Boiler Services' insurance policy from Clarendon. Id. ¶¶ 13, 15. There was a written agreement that Crosstech VI would be a named insured under Crosstech Boiler Services insurance policies, and the relationship between Crosstech VI and Crosstech Boiler Services was disclosed to all Defendants at the time Crosstech Boiler Services acquired the insurance. Id. ¶¶ 16, 17. Correa was a Crosstech VI employee— a loaned employee of Crosstech Boiler Services— and was provided with a Crosstech VI vehicle. Id. ¶ 19. Crosstech VI, Crossland, and Correa requested that the Defendants provide them with a liability policy to insure them against all liability claims arising from Crosstech VI business. Id. ¶ 33.

Codrington's rights as an assignee arose from a Superior Court lawsuit filed in 2007, entitled Codrington v. Crosstech V.I. et al, Superior Court Civil No. SX-07-278, in which he asserted entitlement to damages for negligence against Crosstech VI, Crossland, and Correa. Id. ¶ 8. Crosstech VI, Crossland, and Correa tendered defense and indemnification of the claims to Steadfast and Clarendon, which denied the claims. Id. ¶¶ 9, 20. As a result of the denial, Crosstech VI, Crossland, and Correa could not afford counsel to defend the declaratory judgment action filed against them by the insurance companies and believed they would lose at trial and not be able to pay the verdict. Id. ¶ 31. They entered into a $5,000,000 consent judgment in favor of Codrington and assigned all claims they had against the insurance companies to him. The Superior Court entered the Consent Judgment in July 2018. Id. ¶ 21.

The instant complaint described CRC as an "insurance broker with its principle [sic] place of business in Texas which

does business in the Virgin Islands." Id. ¶ 6. It cited a Steadfast general liability policy for the policy period January 11, 2007 to January 11, 2008, and a Clarendon business auto policy for the policy period December 19, 2006 to December 1, 2007, both of which required those Defendants to pay sums that Crosstech VI, Tom Crossland and Edward Correa may become legally obligated to pay for bodily injury arising out of an occurrence in the coverage territory, id. ¶¶ 22, 23. It further alleged that CRC underwrote the Steadfast policy as an agent of Steadfast. Id. ¶ 25. The complaint sought, inter alia, a declaration that the assignment to Codrington was valid and enforceable and that Defendants did not have a valid defense to enforcement of the assignment. Id. ¶ 39.

Eventually, the Court granted Codrington's motion to amend the complaint, Dkt. No. 82, and Plaintiffs re-filed their Second Amended Complaint, Dkt. No. 83. Steadfast and Clarendon filed answers, Dkt. Nos. 84, 90, and CRC filed a motion to dismiss or transfer venue, Dkt. No. 89. In September 2021, the district court denied CRC's motion to dismiss without prejudice and granted limited jurisdictional discovery. Dkt. No. 123.

(Doc. 191, pp. 2-5) (footnotes omitted).

As it pertains to CRC, Count III of the plaintiff's amended complaint is brought pursuant to 22 V.I.C. §2, *et al.*, which governs insurance transactions affecting subjects located in the United States Virgin Islands and provides insurance carriers owe a duty of good faith and honesty and equity in all insurance matters. Plaintiff alleges that CRC breached its duties when it failed to properly underwrite the insurance policies of Crosstech Boiler Services LP and Crosstech VI and failed to reveal to them the same. Plaintiff further alleges that CRC breached their duty when they refused to

reform the policies to cover the claims of plaintiff. As a result, plaintiff alleges that he is entitled to payment of the consent judgment entered in state court and damages suffered by Crosstech VI, Crossland, and Correa.

In Count IV of the complaint, plaintiff alleges breach of contract against CRC to the extent that the insurance policy, as written, did not cover plaintiff's claims against Crosstech VI, Crossland and Correa, who they allege were third party beneficiaries. As a result, plaintiff alleges that CRC is liable to Crosstech VI, Crossland and Correa, and by assignment plaintiff, in the amount of $5 million plus attorney fees and costs, and pre- and post-judgment interest.

In Counts V and VI of the complaint, plaintiff alleges a claim of negligent underwriting against CRC and allege that CRC failed to warn or inform Crosstech VI, Crossland and Correa that they had not properly underwritten the insurance policies in breach of their duty to do so.

Finally, in Count VII, plaintiff alleges a claim against CRC for negligent and/or intentional misrepresentation. Here, plaintiff alleges that Crosstech and Crossland went to CRC to obtain liability insurance that would defend and indemnify their business against all claims for negligent conduct. According to plaintiff, CRC represented that they had underwritten insurance policies for all claims of negligence. Crosstech and Crossland

reasonably relied on that representation to their detriment. Plaintiff alleges that CRC knew or should have known that those representations were not accurate, but failed to disclose the same.

After jurisdictional discovery[3], CRC filed a renewed motion to dismiss the plaintiff's complaint for lack of personal jurisdiction or, in the alternative, to transfer venue to Texas. (Doc. 157). The plaintiff opposed the motion (Doc. 161), and CRC filed a reply (Doc. 165).

In the pending report, Judge Henderson summarizes the parties' positions. To this extent, CRC argues that it did not provide a service in the Virgin Islands or purposefully avail itself there, as Crump Insurance Services, Inc. ("Crump")[4] was a Texas corporation and, as a wholesale broker, did not deal directly with insurance or enter into contracts of insurance with anyone, anywhere. CRC further argues that there is no evidence that Crump was informed that Crosstech Boiler Services had

---

[3] The relevant documentary and testimonial evidence adduced during jurisdictional discovery has been summarized by Judge Henderson at pp. 5-10 of the report and recommendation.

[4] There is no dispute that CRC acquired Crump in 2012, and Crump was later merged into CRC in 2013. Crump was a corporation organized under the laws of Texas with its principal place of business located at 7557 Rambler Road, Dallas, Texas. As is CRC, Crump was a wholesale insurance broker.

business operations in the Virgin Islands, given an e-mail indicating that changing the name of the insured to CRS VI, which only occurred after the accident, represented only a name change, and the only business location for the insured was in Texas. Further, nothing in Crosstech's 2006 insurance application indicated that the policy was underwritten to insure losses in the Virgin Islands. As a result, CRC argues that none of the provisions of the Virgin Islands long-arm statute, 5 V.I.C. §4903, applied to establish personal jurisdiction over CRC. Because the plaintiff failed to establish personal jurisdiction under the long-arm statute, CRC argues that a due process analysis is irrelevant.[5]

The plaintiff opposes the motion to dismiss arguing that the court must accept the allegations of the complaint as true, and that he need only establish a *prima facie* case of personal jurisdiction. Plaintiff argues that he sufficiently pleaded personal jurisdiction showing that his claims arose from

---

[5] A district court typically exercises personal jurisdiction according to the law of the state where it sits. *See* Fed.R.Civ.P. 4(k)(1)(A). To determine if personal jurisdiction is proper, the court must assess: (1) whether jurisdiction is authorized by the state or territory's long-arm statute, and (2) whether the exercise of personal jurisdiction over the defendant would comport with due process under the United States Constitution, which requires that the defendants have certain minimum contacts with the forum. *Unlimited Holdings, Inc. v. Bertram Yacht, Inc.*, 48 V.I. 941, 944 (D.V.I. 2007); *see also Fin. Trust Co. v. Citibank, N.A.*, 268 F.Supp.2d 561, 566 (D.V.I. 2003) (citing *Int'l Shoe v. Washington*, 326 U.S. 310 (1945)).

CRC transacting business in the Virgin Islands through its underwriting of insurance policies, contracting to supply services there, and contracting to insure persons, property, or risks there. Further, plaintiff argues that Crossland, on behalf of Crosstech Boiler Services and its additional insureds, including Crosstech VI and CRS VI, applied for insurance through Champion[6] who, in turn, submitted the application to CRC, its wholesaler. In a 2008 insurance application, the plaintiff alleges that Crosstech attached information indicating that it was performing work at the Hovensa oil refinery on St. Croix. Plaintiff points out that CRC accepted that information and submitted the application for coverage. As of July 30, 2007, the plaintiff argues that CRC received information that CRS VI earned $9 million with Hovensa in 2006.

Plaintiff argues that CRC transacted business in the Virgin Islands when it contracted with the agent to find a liability policy to cover the business entities in Texas and the Virgin Islands giving the court personal jurisdiction pursuant to 5 V.I.C. §4903(a)(1) and (2). He further argues that the court has personal jurisdiction pursuant to §4903(a)(6) since it was

---

[6] Champion was the retail insurance agent. (Doc. 56, Ex. B, p. 18).

CRC's sole purpose to procure insurance for the agent, and the agent requested coverage for the entities doing business in the Virgin Islands.[7]

"'The burden of demonstrating the facts that establish personal jurisdiction,' falls on the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). Generally, a plaintiff must "prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v.*

---

[7] The Virgin Islands long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

    (1) transacting any business in this territory;

    (2) contracting to supply services or things in this territory;

    \*   \*   \*

    (6) contracting to insure any person, property, or risk located within this territory at the time of contracting.

*See* 5 V.I.C. §§4903(a)(1), (2), (6).

*Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Nevertheless, even in the absence of an evidentiary hearing, "[if] the defendant contradicts the plaintiff's allegations through opposing affidavits . . ., a plaintiff must present particular evidence in support of personal jurisdiction." *See Isaacs v. Arizona Bd. of Regents*, 2015 WL 1534362, at *3 (3d Cir. Apr. 7, 2015). As indicated earlier, no evidentiary hearing was held in this case.

In considering CRC's motion to dismiss, Judge Henderson first looked at the Virgin Islands long-arm statute. Under §4903(a)(1), Judge Henderson found that the evidence shows unequivocally that CRC did not transact business in the Virgin Islands, much less engage in purposeful activity there. Moreover, under §4903(a)(2), Judge Henderson found that nothing in the 2007 insurance policy in effect at the time of Correa's accident indicated that it was going to be performed or would be insuring anything or anyone in the Virgin Islands. It was not until after the Correa accident, in June 2007, when Crosstech requested an amendment to the policy to change the name of the insured to CRS. However, Judge Henderson found this was solely a name change. The address of the insured remained in Texas and no additional amendments covering any additional persons, items, or entities in the Virgin Islands or elsewhere were requested. Because the record contains no evidence to show that CRC knew the 2007 policy provided

insurance services in the Virgin Islands, Judge Henderson found that §4903(a)(2) does not confer personal jurisdiction over CRC. Finally, Judge Henderson found, for the same reasons provided under (a)(1) and (a)(2), §4903(a)(6) also does not apply because nothing in the 2007 policy at the time it was entered into in January 2007 insured any person, property, or risk in the Virgin Islands.

In his objections to the report, plaintiff initially argues that Judge Henderson erred when he failed to hold an evidentiary hearing before issuing his report and recommendation. The court finds this objection disingenuous, at best. Subsequent to filing the motion to dismiss for lack of personal jurisdiction, defense counsel filed a motion for evidentiary hearing. The record reflects that plaintiff's counsel failed to file any formal response to the motion, but when defense counsel sought concurrence in the motion, plaintiff's counsel took the position that there was enough evidence in the record to decide the motion and that an evidentiary hearing was unnecessary. Now that the motion has been decided against the plaintiff,

counsel challenges the court's failure to hold the evidentiary hearing. The plaintiff's objection will be overruled.[8]

Plaintiff also argues that Judge Henderson erred when he failed to state what the standard of proof is for him to establish a *prima facie* case for personal jurisdiction. As such, plaintiff argues that it is unknown which standard Judge Henderson applied to make his determination that the plaintiff had not met his burden of establishing a *prima facie* case.

Despite the plaintiff's argument to the contrary, Judge Henderson, in fact, set forth the standard for ruling on a Rule 12(b)(2) motion, as well as the standard for what the plaintiff needed to establish to make out a *prima facie* showing for personal jurisdiction. (Doc. 191, pp. 13-16). After setting forth the standard, Judge Henderson discussed the allegations of the plaintiff's complaint, as well as the documentary and testimonial evidence produced during jurisdictional discovery. Judge Henderson indicated that the plaintiff had not provided any affidavits for him to consider as true in

---

[8] In any event, plaintiff argues that, had an evidentiary hearing been held, he could have obtained certain testimony to support his claim of personal jurisdiction. The court notes that the parties were given the opportunity to conduct jurisdictional discovery and, despite this, plaintiff failed to come forth with any such testimony.

order to establish that personal jurisdiction is proper.[9] Moreover, he found the evidence produced by plaintiff consisted of documents and deposition testimony, which showed no disputed facts that he would be required to construe in the plaintiff's favor in order to support his personal jurisdiction argument. Because Judge Henderson set forth the standard necessary for the plaintiff to establish a *prima facie* case for personal jurisdiction and discussed the evidence of record in relation to that standard in making his finding that the plaintiff failed to meet his burden of establishing a *prima facie* case of personal jurisdiction, plaintiff's objections on this basis will be overruled.

Finally, plaintiff argues that Judge Henderson erred when he disregarded direct and circumstantial evidence supporting the finding of personal jurisdiction. In so arguing, plaintiff cites to his Ex. 1 in opposition to the defendant's motion, which is a 2008 insurance policy, not the policy at issue. As discussed by Judge Henderson, the only relevant policy is the

---

[9] "'[O]nce a defendant has raised a jurisdictional defense,' the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'" *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 30 (3d Cir. 1996)).

2007 policy based on the 2006 application. Any arguments which plaintiff has regarding the 2008 policy are irrelevant.

In addition, without more, plaintiff cites to Ex. 2 in opposition to the defendant's motion, which is a CRC Group Overview. This Overview reflects that CRC is a "wholesale specialty insurance distributor in North America with . . . offices across the United States and Canada …" Although the Overview indicates that CRC has offices across the United States, there is nothing to indicate that CRC, in fact, conducts business in the U.S. Virgin Islands, and the plaintiff fails to explain how this Overview would in any way confer personal jurisdiction.

In further support of his claim of personal jurisdiction, plaintiff cites to an e-mail from Hovensa to Crosstech dated July 26, 2007, which indicates "our records show we spent over $9 million with Crosstech in 2006" and asking Crosstech to make arrangements with its insurance carrier to increase the amounts of its general liability insurance. The plaintiff argues in his objections that the e-mail also includes telephone numbers which all have "340" area codes, the area code for the Virgin Islands. This e-mail was eventually forwarded from Champion, the insurance agent, to Charles Bauman, who worked for CRC in 2007 to see if the increase was possible and, if so, the cost. Plaintiff argues that this is evidence of Crosstech and

CRS VI operations in the Virgin Islands in 2006 which was provided to CRC in 2007 for an increase in coverage, making CRC aware of the operations in the Virgin Islands. Plaintiff argues that this evidence establishes that he made a *prima facie* case of personal jurisdiction by proving that CRC transacted business in the territory, contracted to supply services or things in the territory, and contracted to insure any person, property, or risk located within the territory at the time of contracting. 5 V.I.C. §4903(a)(1), (2), (6).

      Initially, the e-mail from Hovensa to Crosstech is dated July 26, 2007, after the relevant 2007 policy was effective. Moreover, although the e-mail indicates that Hovensa spent $9 million dollars with Crosstech, the e-mail does not indicate that business was in the Virgin Islands. As such, even with Champion forwarding the e-mail to Bauman, there is nothing in the e-mail putting CRC on notice that the insured had business operations in the Virgin Islands. Further, the record demonstrates that neither Crump nor CRC would deal directly with Crosstech, CRS VI (the insured) or Hovensa (a company the insured does business with). The fact that they were forwarded an e-mail between the insured and a third party company asking for increased coverage does not establish that CRC opened itself up to personal jurisdiction in the Virgin Islands.

Citing to the deposition testimony of CRC's corporate representative, Neil Franklyn Kessler[10], plaintiff argues that a number of party admissions were made, including: CRC is licensed to do business in all fifty states of the United States but was "unaware" of whether CRC had licenses to do business in any territory; CRC did not require more than a one-sentence description about the nature of a potential insured's business; when additional information about a potential insured was obtained by a retail insurance agent for the potential insurer, CRC would review the information prior to sending it to the potential insurer; he could not dispute that a request was submitted by Crossland or Crosstech to change the name of the company to CRS VI, and that CRS VI requested a policy limit increase after receiving the e-mail from Hovensa sometime between 2007 and 2008; CRC was in possession of information for a supplemental insurance application by CRS VI that included reference to a "formal safety program" referencing Hovensa and "attached paperwork 2/18/07"; CRC has no prohibition on doing business within the Virgin Islands; there is no restriction on CRC from obtaining coverage for a potential insured who performs their primary

---

[10] Mr. Kessler is the president and chief operating officer for CRC. (Doc. 60-6, p. 11).

business in a U.S. territory; CRC has not informed retail insurance agents that it has any limitations on where their customers can come from in terms of geography; and, at no time, did Crossland or CRS VI indicate that they limited their geographic area of operation to Texas or Louisiana. (Doc. 194, pp. 7-12).

     Given these admissions, plaintiff argues that the factual dispute is that he contends that CRC procured insurance for Crosstech having knowledge that Crosstech was doing business in the Virgin Islands, whereas CRC argues that it did not have knowledge and that they do not do business in the Virgin Islands. Plaintiff argues that Judge Henderson erred in relying on Mr. Kessler's affirmation to support CRC's contention when he indicated that neither CRC nor Crump were "registered to conduct business in the Virgin Islands, nor did they own real or personal property, maintain a bank account, appoint an agent for service of process, advertise their services, enter into a contract, have an office, agents, sales representatives or employees, or solicit or conduct business in the Virgin Islands." Plaintiff argues that it cannot be disputed that, at least by 2007, CRC unequivocally knew or should have known that Crossland and his companies had done $9 million worth of business in the Virgin Islands when Champion sought to renew Crossland's policies. Having that information, plaintiff argues that CRC still

renewed the policies and availed themselves to the jurisdiction of the Virgin Islands.

Whether or not plaintiff's argument would hold water in an action brought after the 2007 policy was issued is a matter not before the court. The fact in this case, however, is that only the 2006 application and 2007 policy are relevant. The evidence plaintiff is relying on is all after-the-fact. Nothing plaintiff has provided supports his contention that CRC knew that Crosstech had operations in the Virgin Islands when the 2007 policy was issued, and nothing plaintiff has provided supports his contention that CRC is subject to personal jurisdiction in the Virgin Islands.

In light of the foregoing, the court will overrule the plaintiff's objections to the report and recommendation. Further, those portions of the report and recommendation to which objections have been raised will be accepted and adopted in their entirety as the decision of the court. As to those portions of the report and recommendation to which the plaintiff has failed to raise objections, the court finds no clear error of record and agrees with the sound reasoning which led Judge Henderson to his conclusions. The court will therefore adopt those portions of the report as the decision of the court as well.

An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: March 31, 2023**
19-26-01