DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

JAMES CODRINGTON, as Assignee
of the rights of Crosstech VI, Inc.,

        Plaintiff,

v.

STEADFAST INSURANCE CO.,
DEEP SOUTH SURPLUS OF TEXAS,

        Defendants.
_____

1:19-cv-00026-MEM-EAH

TO:    Lee J. Rohn, Esq.
          Jennifer Sue Koockogey, Esq.
            *For Plaintiffs*
          Mark Wilczynski, Esq.
            *For Steadfast Ins. Co.*

## **REPORT AND RECOMMENDATION**

**THIS MATTER** comes before the Court on an Order referring all pending dispositive matters in this case to the undersigned for a Report and Recommendation ("R&R"). Dkt. No. 190. In this R&R, the Court addresses the pending Motion for Summary Judgment, filed by Defendant Steadfast Insurance Company ("Steadfast"), Dkt. No. 112, which the District Court stayed in order that the parties could conduct discovery under Fed. R. Civ. P. 56(d) concerning whether the claims of Plaintiff James Codrington were time-barred. Dkt. No. 122. That Order permitted each party to submit a supplemental memorandum following completion of that limited discovery. Each party filed a memorandum. Dkt. Nos. 153, 155. For the reasons stated below, this Court recommends that Steadfast's Motion for Summary Judgment be granted.

## BACKGROUND

### I.     The Complaint

In April 2019, James Codrington, as Assignee of the rights of Crosstech VI, Inc. and Edwin Correa, filed a First Amended Complaint in the Superior Court of the Virgin Islands against Arch Specialty Insurance Company of Texas ("Arch"), Zurich Insurance Company ("Zurich"),[1] Clarendon American Insurance Company ("Clarendon"), Deep South Surplus of Texas, L.P. ("Deep South"),[2] and CRC SCU f/k/a Crump Ins. Services, entitled *Codrington v. Arch Specialty Ins. Co.,* Civ. No. 126/2019. Dkt. No. 1-2. Defendant CRC removed the complaint to federal court in May 2019 on the basis of diversity jurisdiction. Dkt. No. 1.

Motion practice ensued. In August 2019, Codrington filed a Second Amended Complaint against Steadfast, Clarendon, Deep South, and CRC.[3] Dkt. No. 40. As alleged in the complaint, Codrington brought the instant action as assignee of the rights of Crosstech VI, Inc., a resident corporation of the U.S. Virgin Islands; Tom Crossland, a Texas resident and former president of Crosstech Boiler Services, LP, the parent organization of Crosstech VI; and Edward Correa.[4] *Id.* ¶¶ 2, 8. Crosstech VI was formed in 2005 as a wholly owned subsidiary of Crosstech Boiler Services, the "front company" for work to be done by

---

[1] The Complaint described Defendant Zurich Insurance Company as "Zurich Insurance Company-Steadfast Insurance Company ("Zurich")." Dkt. No. 1-2 ¶ 4.
[2] The Texas Secretary of State filed a Certificate of Termination concerning Deep South, formerly a Texas Limited Partnership, in December 2014. Dkt. No. 1-4. Deep South was never served and has never appeared in this case.
[3] This complaint was refiled at Dkt. No. 83.
[4] This complaint added Tom Crossland as being one of the assignors of rights.

Crosstech Boiler Services at the HOVENSA oil refinery on St. Croix, Virgin Islands. *Id.* ¶ 10. The vehicles used in Crosstech VI's work were hired from Crosstech Boiler Services, and the insurance on those vehicles was provided by Crosstech Boiler Services' insurance policy from Clarendon. *Id.* ¶¶ 13, 15. There was a written agreement that Crosstech VI would be a named insured under Crosstech Boiler Services insurance policies, and the relationship between Crosstech VI and Crosstech Boiler Services was disclosed to all Defendants when Crosstech Boiler Services acquired the insurance. *Id.* ¶¶ 16, 17. Correa was a Crosstech VI employee and was provided with a Crosstech VI vehicle. *Id.* ¶ 19. Crosstech VI, Crossland, and Correa requested that all Defendants provide them with a policy to insure them against all liability claims arising from Crosstech VI business. *Id.* ¶ 33.

Codrington's rights as an assignee arose from an underlying Superior Court lawsuit filed in 2007, entitled *Codrington v. Crosstech V.I. et al,* Superior Court Civil No. SX-07-278, in which he claimed damages for negligence against Crosstech VI, Crossland, and Correa. *Id.* ¶ 8. These three entities tendered defense and indemnification of Codrington's claims to Steadfast and Clarendon, which denied the claims.[5] *Id.* ¶¶ 9, 20. As a result of the denial, the three entities could not afford counsel to defend the declaratory judgment action filed against them by the insurance companies and believed they would lose at trial and not be

---

[5] The complaint does not explain what occurred, and when, that caused Crossland, Crosstech VI, and Correa to seek indemnification. The June 2018 assignment of rights explained that Codrington was operating a motorcycle on March 4, 2007 on St. Croix, and got into an accident with a vehicle driven by Correa, a Crosstech VI employee. Dkt. No. 1-3 ¶ 3.02.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 4

able to pay the verdict. *Id.* ¶ 31. They entered into a $5,000,000 consent judgment in favor of Codrington and assigned all claims they had against the insurance companies to him. The Superior Court entered the Consent Judgment in July 2018.[6] *Id*. ¶ 21.

The complaint cited a Steadfast general liability policy for the period January 11, 2007 to January 11, 2008, and a Clarendon business auto policy for December 19, 2006 to December 1, 2007, both of which allegedly required those companies to pay sums that Crosstech VI, Tom Crossland, and Edward Correa became legally obligated to pay for bodily injury arising out of an occurrence in the coverage territory, *id.* ¶¶ 22, 23. The complaint sought, inter alia, a declaration that the assignment to Codrington was valid and enforceable and that Defendants did not have a valid defense to enforcement of the assignment. *Id.* ¶ 39. It asserted claims against Steadfast (and Clarendon) under 22 V.I.C. § 2 for violating the duty of good faith and fair dealing; for negligent and/or intentional misrepresentation; and for fraudulent conduct. *Id.* at 8-9, 14-15.

Steadfast filed an answer, Dkt. No. 84, and CRC filed a motion to dismiss or transfer venue, Dkt. No. 89. Clarendon then filed a (renewed) motion for summary judgment, Dkt. Nos. 93-95, and Codrington filed a (renewed) motion to stay the motion for summary judgment pending completion of discovery, Dkt. No. 99.

---

[6] The Consent Judgment indicates that only Crosstech VI and Correa were subject to its terms, and the Assignment and Agreement not to Execute also indicated that only Crosstech, VI and Correa were subject to its terms. Dkt. No. 1-3 at 16-29.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 5

## II. Steadfast's Motion for Summary Judgment

In July 2021, Steadfast moved for summary judgment.[7] Dkt. No. 112. It argued that Codrington's causes of action ran afoul of the statute of limitations, the 2018 assignment could not confer standing on Codrington because the statute of limitations had run on the underlying cause of action, and no discovery was required since the traffic accident underlying the claim was excluded by the Steadfast policy. *Id.*

Steadfast, relying for the most part on the Affidavit of Rick Dudek, a Steadfast Assistant Vice President of Complex Claims, Dkt. No. 112-3, asserted the following material facts. Steadfast was an insurance business operating as a member of Zurich Insurance Group. Dkt. No. 112-2 (Statement of Material Facts) ¶ 1, Dkt. No. 112-3 (Dudek Aff.), ¶ 3. In January 2007, Crosstech Boiler Services LP of Richardson, Texas, purchased a Steadfast Commercial General Liability Policy from Crump Insurance Services of Texas, with a coverage period of January 11, 2007 to January 11, 2008. Dkt. No. 112-2 ¶ 2, 112-3 ¶ 9, 112-3 at 6-56. In May 2007, Codrington filed a lawsuit in Superior Court against Crosstech VI Inc. and Edwin Correa concerning a March 4, 2007 traffic accident between Codrington's motorcycle and a pickup truck owned by Crosstech VI and operated by its employee, Correa. Dkt. No. 112-2 ¶¶ 3, 4. Correa acted negligently by disobeying a stop sign and since he was allegedly acting in the

---

[7] Steadfast did not file a motion for summary judgment in *Alexander v. Steadfast*, 1:20-cv-0038 (D.V.I.), a case that has been consolidated with *Codrington* for discovery purposes.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 6

scope of his employment, Crosstech VI was liable based on respondeat superior. Dkt. No. 112-2 ¶¶ 5, 6.

On August 23, 2010, Steadfast received correspondence from Douglas Capdeville, Esq. who sought defense and indemnity for his client, Crosstech VI (an affiliated company of Crosstech Boiler Services) under the Steadfast policy—the first notice Steadfast had received of the March 2007 accident and possible liability. Dkt. No. 112-2 ¶¶ 7, 8; Dkt. No. 112-3 ¶¶ 10-12, pp. 58-60. Capdeville's letter conceded that the vehicle was insured at the time of the accident under a different policy, issued by Underwriters of Lloyds (attached at Dkt. No. 112-3 at 65) and that tendering this claim under the Steadfast liability policy was the idea of Codrington's attorney who believed that because Codrington was proceeding under a respondeat superior theory, the commercial general liability policy and not the automobile policy applied. Dkt. No. 112-2 ¶¶ 9-11, Dkt. No. 112-3 ¶¶ 13-15 and p. 67. That day, Steadfast generated a General Liability Notice of Occurrence/Claim, as standard practice, Dkt. No. 112-3 at p. 69-71, and acknowledged receipt of the claim, Dkt. No. 112-3 at p. 73. A Steadfast team manager sent a letter to the insured stating that a Zurich senior claims specialist, Paul Valle, would handle the coverage question under the Steadfast policy. Dkt. No. 112-2 ¶¶ 12-14, Dkt. No. 112-3 ¶¶ 16-18, and p. 75. The next day (August 24), Mr. Valle informed the Steadfast team manager of disclaimer of coverage. Dkt. No. 112-2 ¶ 15, Dkt. No. 112-3 ¶ 19 and p. 78.

In a letter dated September 7, 2010, Mr. Valle informed Attorney Capdeville of the disclaimer of coverage, quoting the relevant section of the policy (Section I(2)(g)[8]) that excluded coverage for bodily injury or property damage arising out of the use of any auto owned or operated by any insured. Dkt. No. 112-2 ¶ 16, Dkt. No. 112-3 ¶ 20 and pp. 80-82. Attorney Capdeville agreed, but had wanted to send in the claim to receive a formal decision. Dkt. No. 112-3 at p. 84. Neither Steadfast nor Zurich received any other information concerning the September 2010 denial of coverage until they received service of process in the instant action in May 2019. Dkt. No. 112-2 ¶ 18, Dkt. No. 112-3 ¶ 22.

The assignment from Crosstech VI and Correa to Codrington in June 2018, included "extra-contractual or bad faith claims" and any claims against Steadfast arising from its failure to fulfill its good faith obligations and protect Crosstech VI and Correa from liability to Codrington. Dkt. No. 112-2 ¶¶ 19-20; Dkt. No. 71-9. Both Steadfast's and Zurich's practice was to document any material representations to an insured, and there were no such representations outside of the policy documents. Dkt. No. 112-2 ¶ 25, Dkt. No. 112-3 ¶ 23.

---

[8] The Exclusions section of the policy, Section 1(2)(g), provided that bodily injury or property damage arising out of the ownership, use, or entrustment to others of any auto was excluded. Dkt. No. 112-3 at 12. Steadfast's Statement of Material Facts cited other provisions of the policy, Dkt. No. 112 at 5-10, which described Duties in the Event of Occurrence (prompt notification of claims), § IV(2); Legal Action Against Us, describing that no person had a right under the policy to join Steadfast unless all policy terms had been complied with, § IV(3); and Transfer of Your Rights and Duties Under This Policy provided that the insured's rights and duties could not be transferred without Steadfast's written consent except in the case of the death of a Named Insured, § IV(13).

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 8

In its memorandum, Steadfast argued that the two-year statute of limitations for the negligent/intentional misrepresentation and fraudulent conduct claims applied. Dkt. No. 112-1 at 6-7. While Virgin Islands courts have applied a two-year tort statute of limitations for bad faith breach of the duty of good faith and fair dealing, even if the six-year limitations period for breach of contract applied, that period ran as well before the case was filed. *Id*. at 7. The operative facts giving rise to the claims accrued no later than the September 7, 2010 denial of coverage, which put the insured on notice that he must make a timely claim or risk loss on the claim.[9] *Id*. All that occurred after that date was the continuation of the litigation in Superior Court that concluded with the June 2018 consent judgment.

---

[9] Steadfast analyzed the elements in insurance bad faith claims, set out in *Justin v. Guardian Ins. Co.*, 670 F. Supp. 614, 617 (D.V.I. 1987), to establish when the essential acts occurred for each element. Dkt. No. 112 at 8-11. The date for the existence of the insurance contract was before the September 7, 2010 denial of coverage; the intentional refusal to pay the claim was on September 7, 2010; the nonexistence of any legitimate reason for the denial and the insurer's knowledge of no legitimate reason for the denial could not have occurred after September 7, 2010; evidence of the insurer's failure to investigate is not applicable but could be no later than the date coverage was denied. *Id*. at 9. If either Steadfast or Zurich did wrong to its insured, that wrong occurred no later than September 7, 2010. *Id*. Determining trigger dates for a bad faith claim is simple in denial of coverage cases: the date the defendant insurance company first denied the insured's claim in bad faith, citing *Simon Wrecking Co. v. AIU Ins. Co*., 350 F. Supp. 2d 624, 631-32 (E.D. Pa. 2004). *Id.* at 10.
   Similarly, whatever misrepresentations may have occurred or whatever fraudulent conduct was perpetrated by Steadfast necessarily occurred and was known by September 7, 2010, when coverage was denied. *Id*. No grounds supported the position that the claim existed in June 2018 when the consent judgment was agreed to, or that the statute of limitations had not run by March 2019 when the instant action was filed in the Superior Court. The statute of limitations ran in 2012. Even if Steadfast applied the six-year statute of limitations for breach of contract, it would have run in September 2016, long before the lawsuit was initiated. *Id.* at 11.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 9

Second, Codrington did not have standing to sue because he could not demonstrate that his asserted injury would be redressed by a favorable decision, citing cases finding no standing where the limitations period had run on a claim prior to assignment. *Id*. at 11-12.

Third, Steadfast pointed to Mr. Valle's notation that Attorney Capdeville agreed with the disclaimer but just wanted a formal decision from Steadfast. *Id*. at 12. While this was not determinative, the policy expressly excluded bodily injury or property damage arising out of the use of automobiles, which was specifically cited by Mr. Valle as the reason for declining coverage. *Id.* at 13. Courts look to the express terms of the agreement to determine the parties' intent. *Id*. Crosstech VI had paid for a separate business automobile policy that covered operation of its vehicles, including the truck involved in the collision. *Id*. at 14.

In opposition, Codrington moved under Fed. R. Civ. P. 56(d) to stay the motion for summary judgment pending completion of discovery, as no discovery had yet taken place.[10] Dkt. No. 115. The memorandum in large part concerned Codrington's position that he was entitled to discovery on his claims in order to support his position that genuine disputes of material fact existed to preclude summary judgment. For example, because no discovery had taken place, he could not establish that Crosstech VI and Correa were insureds under an applicable policy, and that the contract extended to auto accident claims under respondeat superior. *Id*. at 8. He also sought to ascertain Steadfast's knowledge regarding the inaccuracy

---

[10] Consequently, it did not file a Statement of Material Facts or a Response to Steadfast's Statement of Material Facts.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 10

of information supplied to Crossland and Crosstech VI concerning Steadfast's policy coverage, *id.* at 12, and his claim that Steadfast acted fraudulently by falsely asserting to Crossland and Crosstech VI that there was no coverage under the policy, *id*. at 14. The memorandum mentioned Steadfast's statute of limitations argument only in passing. *Id.* at 4. Attached to the motion was an affirmation by Codrington's attorney attesting to the procedural posture of the case and the information Plaintiff would seek in discovery. Dkt. No. 115-1. Steadfast opposed the motion staying summary judgment. Dkt. No. 116.

In September 2021, District Judge Anne E. Thompson issued an Order in which she noted that, although it appeared that Codrington's claims were time-barred, the information he requested might preclude the entry of summary judgment. Dkt. No. 122 at 2. Judge Thompson therefore granted Codrington's motions to stay both Clarendon's and Steadfast's pending motions for summary judgment, ordered the parties to exchange limited discovery for the purpose of establishing whether Codrington's claims were time-barred, and to submit supplemental memoranda within 45 days of the Order. *Id.* at 2-3. The Court later granted a motion to extend the deadline, Dkt. No. 152.

In January 2023, Steadfast filed its memorandum in support of its motion for summary judgment.[11] Dkt. No. 153. It asserted that, following the exchange of written discovery and having conducted depositions of relevant witnesses, Plaintiff's claims violated

---

[11] In February 2023, the parties stipulated to the dismissal of Clarendon from the lawsuit. Dkt. Nos. 154, 156.

the statute of limitations; it asked the Court to grant the relief sought in its motion for summary judgment. *Id.* at 1. Steadfast cited Virgin Islands case law that a two-year statute of limitations applied to the three claims asserted against it: misrepresentation and fraud; negligent misrepresentation, bad faith; insurance bad faith claims and breach of the duty of good faith and fair dealing. *Id*. at 2. Steadfast denied coverage on September 7, 2010, and the insured was aware of the denial at that time. A bad faith claim would have to have been filed by September 7, 2012. No viable cause of action existed on June 21, 2018 when the assignment and consent judgment were agreed to between Codrington, Crosstech VI and Correa or when Plaintiff filed his complaint. *Id*. No evidence has shown otherwise. *Id.*

Further, while Plaintiff suggested that the statute of limitations may have been tolled under the continuing violations doctrine, the Virgin Islands Supreme Court, in *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 227 (V.I. 2013), held otherwise. Anthony's property had been damaged in Hurricane Marilyn, and FirstBank had sought to foreclose. Anthony counterclaimed, arguing that FirstBank breached its contractual duty to insure the property and that the continuing violations doctrine tolled the statute of limitations. On summary judgment, the Superior Court dismissed the counterclaims, given that they had been filed in 2007, twelve years after FirstBank's alleged breaches in 1995. It also rejected Anthony's continuing violations theory that the deterioration of the property was ongoing, because Anthony failed to provide facts establishing that FirstBank continued to commit "unlawful acts," as required to invoke the doctrine after its alleged misrepresentations that the

property was insured. Rather, he was pointing out the continuing "ill effects" from the original violation. *Id.* at 230-31. The Virgin Islands Supreme Court affirmed.

Here, Codrington alleged that every day after Steadfast denied coverage extended the statute of limitations anew because Steadfast did not correct its improper denial of coverage. Dkt. No. 153 at 4. *Anthony* foreclosed that argument. And even if the denial was considered an illegal act, there was no evidence of any act subsequent to September 2010 to constitute continuing unlawful acts required to invoke the doctrine. *Id.* (citing cases).

In his Opposition, Codrington argued that the statute of limitations did not begin to run until June 21, 2018 and that the continuing violations doctrine tolled the statute of limitations from 2010 until June 21, 2018 when Plaintiff's claims "vested." Dkt. No. 155 at 1. Specifically, he contended that his claims did not "manifest" until the Consent Judgment and Release and Assignment of Rights were entered into on June 8, 2018. While Steadfast declined coverage under the policy for the underlying accident, it "continued to deny coverage and a defense when Plaintiff filed the complaint in the underlying litigation, . . . when Plaintiff filed the first amended complaint in the underlying litigation, . . . when their insured gave a sworn affidavit attesting to the relationship between Correa and Crosstech VI Inc. and the business structure of his companies, . . . when Plaintiff and Steadfast's insured entered into an agreement and assignment of rights, . . . [and] when Plaintiff filed the Complaint, Amended Complaint, and Second Amended Complaint in this litigation," continuing daily throughout the underlying case and to this day. *Id.* at 2-3. Codrington had

no right to sue any of the Defendants in the instant case until June 21, 2018 when Crosstech VI and Correa assigned their rights in the underlying accident to him, and he timely filed his complaint in March 2019. *Id*. at 3-4. Codrington points to the deposition of Richard Dudek, Steadfast's AVP of Complex Claims, who testified that the attorney for Crosstech Boiler Services and Crossland tendered a claim to Steadfast on August 17, 2010 that was denied on September 7, 2010; after coverage was denied, the insureds were "never directly copied to be made aware of that decision, and Capdeville did not state in his tender of claim that the claim had no coverage." *Id*. at 4, citing Dkt. No. 155-1 (Dudek Dep.) at 25, 30, 36-38. Steadfast did not monitor the Codrington claim after it denied coverage and maintained the denial through the date of Dudek's deposition in November 2021. *Id*. citing Dkt. No. 155-1 at 43-45. Thus, Steadfast continued a "bad faith denial and refusal to provide a defense from August 17, 2010, through June 21, 2018, and up to today." *Id*. at 5.

Further, Steadfast's breach of a "continuing covenant" resulted in a cause of action each day the breach continued; therefore the statute of limitations began to run anew each day, and Codrington filed his complaint within the statute of limitations, *Id*., citing *Christmas v. V.I. Water & Power Auth.*, 527 F. Supp. 843, 848 (D.V.I. 1981). He also asserted that *Anthony*, 58 V.I. 224, was distinguishable because Steadfast owed its insureds "an ongoing duty to insure and defend"; it was aware of the lawsuit that Codrington brought against its insureds, who had requested a defense, and that litigation continued even though Steadfast denied coverage and a defense. *Id.* at 6. Every day that the insureds went without coverage and a

defense was a continuing violation of Steadfast's duties to its insureds. *Id*. at 6-7. As a result of the denial, the insureds entered into the Assignment and Agreement not to Execute and Consent Judgment in June 2018. Therefore, at the earliest, the statute of limitations for Steadfast's breach of its duties to its insureds began on June 21, 2018, and Codrington's filing of the complaint in March 2019 was within the statute of limitations. *Id*. at 7.

On February 7, 2023, after being assigned this case in September 2022, Dkt. No. 177, Judge Malachy E. Mannion referred all pending dispositive motions to the undersigned for R&Rs. Dkt. No. 190.

## DISCUSSION

Codrington's complaint, filed in April 2019, was removed to this Court on the basis of diversity jurisdiction. Dkt. No. 1-3. He asserted claims of breach of the duty of good faith and fair dealing, negligent and/or intentional misrepresentation, and fraudulent conduct against Steadfast. *Id*. Steadfast sought summary judgment, asserting that Codrington's claims were time-barred. The parties conducted limited discovery on this issue.

A federal court "must apply the substantive laws of its forum state in diversity actions, and these include state statutes of limitations." *Stephens v. Clash*, 796 F.3d 281, 289 (3d Cir. 2015). Accordingly, the 2-year statute of limitations applies for negligent and intentional misrepresentation claims, *see Brouillard v. DLJ Mtge. Capital, Inc.*, Civ. No. 2014-0063, 2015 WL 6549224, at *4, 63 V.I. 788, 795 (V.I. 2015); and the 2-year statute of limitations applies for the fraudulent conduct claim, *see Martin v Martin*, Civ. No. 2007-0117, 2010 WL 4962412,

at *6, 54 V.I. 379, 390 (V.I. 2010); 5 V.I.C. § 31(5)(A). Virgin Islands courts are split on whether a two-year or six-year statute of limitations applies for breach of the implied contract of good faith and fair dealing.[12]

A statute of limitations does not accrue until "the 'occurrence of the essential facts that give rise to th[e] cause of action.'" *Brouillard,* 63 V.I. at 795 (quoting *Anthony*, 58 V.I. 224, 227 (2013)). Codrington's automobile accident with Correa occurred in March 2007. Dkt. No. 1-3 ¶ 3.02. On August 17, 2010, Crosstech VI's attorney requested that Steadfast provide a defense in Codrington's lawsuit against Crosstech VI and Correa as a result of the 2007 accident per the indemnity obligations in the insurance policy. Dkt. No. 112-3 at 59-60. On September 7, 2010, a Steadfast responded to the attorney, in a three-page letter, stating that "there is no coverage . . . under the subject policy" because the policy did not cover bodily injury or property damage of any use or entrustment to others of any automobile. Dkt. No.

---

[12] Steadfast cited *Guardian Ins. Co. v. Khalil,* 863 V.I. 3 , 22 (V.I. Super. Ct. 2012), *declined to follow on other grounds by Certain Underwriters at Lloyd's of London v. Garcia* (V.I. Super. Ct. Nov. 25, 2015). The *Khalil* Court ruled that the breach of good faith and fair dealing claim, which focused on the alleged bad faith of the insurance company, was governed by the tort two-year statute of limitations for bad faith. In *Davies v. Certain Underwriters at Lloyds of London*, ST-2014-cv-00637, 2017 WL 3759810 at * 9 n.58 (V.I. Super. Aug. 25, 2017), an opinion issued by Judge Francois, the court followed the *Khalil* two-year statute of limitations for a breach of a good faith and fair dealing claim alleging bad faith by an insurance company. However, in a 2020 opinion by Judge Francois, *Pegasus Holding Grp. Stables, LLC v. Share*, No. ST-2014-CV-00069, 2020 WL 8020083, at *5 (V.I. Super. Aug. 21, 2020), the court rejected a two-year statute of limitations for breach of the duty of good faith and fair dealing (although this case did not allege bad faith) and held that the Virgin Islands 6-year statute of limitations applied. The Virgin Islands Supreme Court has not weighed in on this issue. In any event, whichever statute of limitations applies for this claim would not matter, since the claim would be barred under either statute of limitations.

112-3 at 80-82. Thus, on September 7, 2010, the date of denial of coverage, any claims Crosstech VI and Correa had under the policy accrued for statute of limitations purposes because the allegedly improper denial was the "essential fact" that would give rise to their causes of action. *Brouillard*, 63 V.I. at 795; *see also Wegfahrt v. Allstate Fire & Cas. Ins. Co.*, No. 5:19-CV-04493-JDW, 2019 WL 6310259, at *2 (E.D. Pa. Nov. 25, 2019) ("In evaluating correspondence from an insurance company, the question is what effect the correspondence would have on a reasonable recipient. If the correspondence, taken as a whole, demonstrates that the insurance company does not intend to provide coverage, then it constitutes a denial and triggers the accrual of the statute of limitations. Here, Allstate's letter in June 2011 did just that. It cited several reasons why the Policy did not provide coverage in Allstate's view."); *cf. Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 224 (3d Cir. 2005) (interpreting Pennsylvania statute for insurance bad faith claims and affirming that a claim accrues "when the insurer first provides definite notice of a refusal to indemnify or defend."). Presuming that Crosstech VI and Correa could assign their claims to Codrington, the accrual date of September 7, 2010 did not change for Codrington's claims either, as his claims were derivative of Crosstech VI and Correa's claims under the policy, given that an "assignee stands in the shoes of the assignor." *UMLIC VP LLC v. Matthias*, 364 F.3d 125, 131 (3d Cir. 2004).

Codrington did not indicate in his initial opposition to the motion for summary judgment when his claims accrued. Dkt. No. 115. In his supplemental response, Dkt. No. 155, he does not explicitly state that his claims accrued in 2010 with the denial letter sent to

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 17

Crosstech's counsel. Rather, he asserts that "the doctrine of continuing violation tolled the Statute of Limitations *from 2010* until June 21, 2018 when Plaintiff's claims vested." Dkt. No. 155 at 1 (emphasis added). The Court views this statement as an acknowledgment that Codrington's claims in the instant lawsuit "vested"[13] in September 2010. Taking that date, then, as the date of accrual, for his three causes of action against Steadfast, the two-year statute of limitations for the misrepresentation and fraud claims ran in September 2012, and even if the Court were to apply the six-year statute of limitations for breach of the duty of good faith and fair dealing, the limitations period ran in September 2016. Codrington first filed the lawsuit against Steadfast in April 2019—more than two and one-half years after the longest statute of limitations had run. Therefore, his claims must be dismissed as time-barred unless the continuing violation doctrine applies to toll the statute of limitations.

The Court looks to Virgin Islands law for tolling rules. *Wallace v. Kato,* 549 U.S. 384, 394 (2007). The continuing violation doctrine states that "when a claim involves continuing or repeated conduct, the limitations period does not begin to run until the date of the last injury or when the wrongful conduct ceased." *Anthony*, 58 V.I. at 230 (internal quotation marks omitted); *see also Brouillard,* 63 V.I. at 796–97 (quoting *Felter v. Norton,* 412 F.Supp.2d 118, 125 (D.D.C. 2006) for the proposition that "When courts apply the continuing violation doctrine, the claim will not be barred provided that at least one wrongful act occurred during

---

[13] Codrington provides no case law or other explanation that illuminates how the concept of "vesting" impacts its statute of limitations arguments.

the statute of limitations period and that it was committed in furtherance of a continuing wrongful act or policy or is directly related to a similar wrongful act committed outside the statute of limitations.").

In order to apply this doctrine, "(t)he plaintiff must make a threshold showing that his claim involved continual *unlawful acts,* not continual *ill effects* from an original violation before a court will consider whether the equitable doctrine is available." *Anthony*, 58 V.I. at 230 (internal citation and quotation marks omitted) (emphasis in original). When applying the continuing violation doctrine, a court asks: "(1) whether the alleged tort giving rise to the plaintiff's harm is recurring; (2) if so, whether the resulting injury is permanent; and (3) if so, when did the plaintiff know or could have known of the critical facts indicating that the injuries were likely to be permanent." *Poleon v. Gov't of Virgin Islands*, No. CV 2013-024, 2018 WL 3764086, at *15 (D.V.I. Aug. 8, 2018) (citing *In re Tutu Wells Contamination Litig.*, 909 F. Supp. 980, 988 (D.V.I. 1995)). In *Bluebeard's Castle, Inc. v. Hodge,* 2009 WL 891896, 51 V.I. 672 (D.V.I. App. Div. Apr. 1, 2009), *vacated on other grounds by Hodge v Bluebeard's Castle, Inc.,* VI, 2015 WL 3634032, 62 V.I. 671 (June 10, 2015), the court cited examples of continuing violations—applied in the context of trespass or nuisance when recurrent conduct or injury is involved, such as a physical encroachment or an invasion on land that is ongoing and may be abated. *Id.* at *6, 51 V.I. at 686. It has also been employed in lawsuits involving federal employment discrimination claims. *See, e.g., Glasgow v. Veolia Water N. Am. Operating Servs., LLC*, 2010 WL 3780966, at *5-*6 (D.V.I. Sept. 21, 2010).

Here, Codrington's claims as an assignee all accrued at a discrete point in time—September 7, 2010—when Steadfast denied coverage under its policy to Crosstech VI and declined to provide the insured a defense in the underlying lawsuit. That denial was a single act; the insureds did not challenge the denial such that Steadfast was called upon to deny the claim again (or again and again) based on a new or different argument or when any of the events occurred in the underlying litigation (including the assignment of rights) or in this litigation. Contrary to Codrington's assertion, Steadfast did not continue to deny the claims each day up to the present. The one denial on September 7, 2010 was Steadfast's permanent response to the request for defense and indemnification; it was not a recurring injury. *Poleon*, 2018 WL 3764086, at *15. Codrington's argument is a textbook example of continual *ill effects* from an original violation, not continued unlawful acts (as the various filings are not unlawful acts, and he does not allege anything else).[14] *Anthony*, 58 V.I. at 230; *see also* Brouillard, 63 V.I. at 796–97.

## CONCLUSION

Accordingly, for the reasons discussed above, the Court **RECOMMENDS** that Defendant Steadfast's Motion for Summary Judgment, Dkt. No. 112, be **GRANTED**.

---

[14] For the same reasons, Codrington's conclusory assertion that Steadfast had a "continuing covenant" with its insureds, Dkt. No. 155 at 5, without explaining how, fails. He also claimed that *Anthony* was distinguishable because Steadfast owed its insureds "an ongoing duty to insure and defend" but did not explain where that duty emanated from. *Id.* at 6.

*Codrington v. Steadfast Insurance Co.*
1:19-cv-00026-MEM-EAH
Report & Recommendation
Page 20

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice, 28 U.S.C. § 636(b)(1), and must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. *See, e.g., Thomas v. Arn*, 474 U.S. 140 (1985).

ENTER:

Dated: June 23, 2023

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE